# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Outlaw Laboratory, LP, | Case No.: 2:18-cv-00369-JAD-CWH |
| Plaintiff | **Order Granting Motions to Dismiss** |
| v. | [ECF Nos. 36, 49] |
| Trepco Imports & Distribution, Ltd. d/b/a Trepco West d/b/a Trepco Sales Company d/b/a Kennedy Wholesale, et al. | |
| Defendants | |

Plaintiff Outlaw Laboratory, LP manufactures and sells TriSteel and TriSteel 8hour, two all-natural male sexual-performance-enhancement supplements. It sues two wholesalers and eight retailers of competing male-enhancement products. The competing products claim to be all natural but, according to Outlaw, they contain synthetic ingredients like sildenafil nitrate, commonly known as Viagra. Outlaw pleads a single claim against all the defendants for false advertising in violation of the Lanham Act, alleging that the packaging of eleven competing products uses phrases that falsely indicate that the products are all natural and are safe to take without a prescription.

Of the ten defendants, only four remain. The sole remaining wholesaler, Trepco Imports & Distribution, Ltd., moves to dismiss, arguing that Outlaw's allegations against it fail to meet the heightened specificity standard required for a Lanham Act false-advertising claim under Federal Rule of Civil Procedure 9(b).[1] One of the retailer defendants, Higuchi Developer, Inc., also moves to dismiss,[2] and the other remaining retailer defendants, Ryan Store Inc. and High

---
[1] ECF No. 36.
[2] ECF No. 49.

Class Hookah Shop LLC, move to join that motion.[3] They argue that Outlaw lacks both constitutional and statutory standing to sue them and that its allegations against them do not satisfy Rule 9(b). I find that Outlaw has sufficiently alleged facts to support its standing but has left 9(b) unsatisfied as to all defendants. I therefore grant the motions to dismiss without prejudice and with leave for Outlaw to amend its complaint.

## Analysis

### A.   Trepco's motion to dismiss

To prove a claim for false advertising in violation of the Lanham Act, the plaintiff must establish: (1) a false statement of fact was made by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.[4]

A claim of false advertising in violation of the Lanham Act is grounded in fraud and must be pled with the particularity required in Federal Rule of Civil Procedure 9(b).[5] Rule 9 requires a party to "state with particularity the circumstances constituting fraud or mistake."[6] This "particularity" standard requires a plaintiff to "identify the who, what, when, where, and how of

---

[3] ECF Nos. 50, 51.

[4] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

[5] *See LT Intern. Ltd v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1244 (D. Nev. 2014). The parties agree that the plaintiff's claim is subject to this standard. *See* ECF No. 36 at 9; ECF No. 40 at 5.

[6] Fed. R. Civ. P. 9(b).

2

the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."[7]  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of allegations surrounding [its] alleged participation in the fraud."[8]  This increased detail is required "to give defendants notice of the particular misconduct [that] is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[9]

Trepco argues that Outlaw's claim against it fails to meet this standard because (1) Outlaw does not allege that Trepco manufactures the products in question or is responsible for the message on the products' packaging, (2) Outlaw groups all the defendants together and does not allege any specific conduct attributable to Trepco, and (3) Outlaw fails to allege with sufficient specificity what statements were made and when.  Outlaw responds that Trepco is a proper defendant because Lanham Act liability covers more than just manufacturers.  Outlaw also asserts that its allegations are specific enough to satisfy Rule 9(b)'s pleading standard.

### 1. Trepco doesn't manufacture or make packaging but can still be sued under the Lanham Act.

Trepco cites no authority to support its argument that it cannot be held liable under the Lanham Act because it did not manufacture the products in question or design the products' packaging.  In fact, the Lanham Act applies to "any person" who makes a "false or misleading description of fact, or false or misleading representation of fact" about "the nature,

---

[7] *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

[8] *United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)).

[9] *Semegen v. Weidner*, 78 F.2d 727, 731 (9th Cir. 1985).

3

characteristics, qualities, or geographic origin of his or her *or another person's* goods."[10] The basis of Outlaw's claim against Trepco is that Trepco disseminated the false advertising on the products' packaging. Courts have held that similar conduct subjects an entity to liability under the Lanham Act.[11] Trepco, therefore, can be held liable for false advertising on the theory alleged.

### 2. Outlaw's allegations against Trepco do not satisfy Rule 9(b).

Despite the ability to sue Trepco for false advertising, Outlaw's allegations against Trepco fall short of 9(b)'s standard in several ways. First, Outlaw fails to adequately address the "who" of its false advertising claim. For most of the complaint, Outlaw lumps all the defendants together or sorts them by "supplier defendants" and "retailer defendants," leaving the defendants to guess what allegations apply to whom. When Outlaw does single Trepco out, it still fails to specify which allegedly false statements Trepco is liable for. Outlaw repeatedly references the assertions made on the products' packaging—phrases like "ALL NATURAL," "a NATURAL FORMULA," "NO HARMFUL synthetic chemicals," and "NO PRESCRIPTION necessary"—but never specifies which claims are made by which product or what products Trepco allegedly sold. The "what" aspect of Outlaw's claim therefore fails to satisfy Rule 9(b), too.

Outlaw further comes up short in alleging when Trepco sold the products. Outlaw argues a speculative time period based on a letter from Higuchi, but all that communication shows is that Higuchi may have been selling Rhino 8 Platinum 8000, Rhino 12 Titanium 6000, and

---

[10] 15 U.S.C. § 1125(a)(1) (emphasis added).

[11] *Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1512 (S.D. N.Y. 1986) (finding that defendant who independently distributed and presented false report that it used against plaintiff competitor could still be liable for false advertising).

4

Libigrow XXXTreme sometime before December 19, 2017.[12] Nothing about this allegation indicates when Higuchi purchased the products or whether Higuchi definitely purchased them from Trepco. It is also unclear from the complaint if Higuchi is the only retailer-defendant that purchased products from Trepco and whether Outlaw attaches the product "order book" from Trepco's website simply to show that Trepco sold some products listed in the complaint or to show the category under which the products were being sold.[13]

Outlaw therefore fails to meet Rule 9(b)'s specificity standard in its claim against Trepco. So I dismiss the claim against Trepco without prejudice and grant Outlaw leave to amend to allege additional facts with the specificity that Rule 9(b) requires.

**B.     Higuchi's motion to dismiss**

Higuchi, joined by Ryan Store and High Class, moves to dismiss Outlaw's claim against it, arguing that Outlaw lacks both Article III and statutory standing to sue the retailer defendants and, even if it did have standing, Outlaw's allegations against them fail to meet Rule 9(b)'s specificity standard.[14]

      **1.     Outlaw alleged enough facts to establish Article III standing.**

Standing is a threshold jurisdictional issue that is distinct from the merits of a litigant's claim.[15] "The [standing] doctrine limits the category of litigants empowered to maintain a

---

[12] ECF No. 33 at 47.

[13] Outlaw argues in response to Trepco's motion that the order book is a secondary means of disseminating false advertising because Trepco listed some of the products identified in the complaint as "vitamins." However, Outlaw does not make that allegation in its complaint.

[14] Higuchi also argues that it is the wrong defendant and that Outlaw should have sued another entity that actually operates the shop at the address specified in the complaint. But Higuchi abandons that argument in its reply, so I deem this argument abandoned do not address it here.

[15] *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

lawsuit in federal court to seek redress for a legal wrong."[16] To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that fact is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[17] "The party invoking federal jurisdiction bears the burden of establishing" the standing elements "with the manner and degree of evidence required at the successive stages of the litigation."[18] So, on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice."[19]

"In a false advertising suit, a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product."[20] To do so, a plaintiff may "provide direct proof such as lost sales figures, or may rely on 'probable market behavior' by establishing a 'chain of inferences showing how defendant's false advertising could harm plaintiff's business.'"[21]

Higuchi argues that Outlaw has not sufficiently alleged an injury in fact to satisfy Article III's standing requirements because Outlaw has not alleged overlap between its activities and that of the retailer defendants. However, Outlaw alleged that the sale of the complained-of products negatively impacted its sales of TriSteel and TriSteel 8hour, leading to "ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to

---

[16] *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1547 (2016) (citations omitted).
[17] *Id.*
[18] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).
[19] *Id.*
[20] *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (internal quotations omitted).
[21] *Animal Legal Defense Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 997 (quoting *TrafficSchool.com*, 653 F.3d at 825).

6

Defendants and the loss of goodwill in Plaintiff's products."[22] Higuchi is correct that Outlaw has not presented solid data about its business losses and its other allegations are quite generalized, but the specificity Higuchi seeks is not required at this stage.[23] Outlaw alleges that the retailer-defendants' acts of placing the allegedly illicit products for sale resulted in a loss of sales and business reputation. Whether Outlaw can prove this element is another question entirely and is not required at this stage. What is required are allegations that, accepted as true and viewed in a light favorable to Outlaw, show an injury in fact. And Outlaw has alleged an injury in fact sufficient to survive this motion to dismiss.

### 2. Outlaw alleged sufficient facts to show statutory standing.

To show standing under the Lanham Act, "a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant."[24] If the plaintiff can show that it is a direct competitor, then a misrepresentation leads to a presumption of "commercial injury," and Lanham Act standing is met.[25] Higuchi argues that Outlaw fails the second prong of the test because they are not competitors: Higuchi is a down-the-chain retailer that does not manufacture its own goods, while Outlaw is a manufacturer that also sells its products directly to consumers.

Outlaw alleges that, as a manufacturer of "male sexual performance enhancement supplements that promote increased sexual desire and stamina," it is "in direct competition with those who manufacture, sell, distribute[,] and market sexual performance enhancement

---

[22] ECF No. 33 at ¶ 63.
[23] *See Lujan*, 504 U.S. at 561.
[24] *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).
[25] *TrafficSchool.com*, 653 F.3d at 827.

7

products."[26] It contends that it targets the same customers as the defendants: men who are seeking an all-natural alternative to prescription-only synthetic male-enhancement drugs.[27] These allegations, accepted as true, support Outlaw's standing under the Lanham Act.

### 3. Outlaw's factual allegations against the retailer-defendants are not specific enough to satisfy Rule 9(b).

It is under Rule 9(b)'s specificity standard that Outlaw's claims falter. The allegations against Higuchi, Ryan Store, and High Class fail to rise to Rule 9(b)'s standard for many of the same reasons the allegations against Trepco do. Outlaw merely states that these defendants operate smoke and souvenir shops that have some of the complained-of products available for purchase.[28] It makes no specific allegations about how it knows these defendants sold the products or when the retailers stocked them. The single exception is that Outlaw alleges that Higuchi had some products for sale "up until December 19, 2017,"[29] which still fails to give a solid timeframe for Higuchi's alleged wrongdoing. And, as discussed in my analysis of Trepco's motion, Outlaw fails to designate which allegedly false statements were made by which product. This makes it impossible for the defendants to know what comments they are being held responsible for. Outlaw also fails to allege how the defendants disseminated the message—were the products merely on a shelf available for purchase, or did the retailers display them in some prominent way?

These sparse allegations—particularly where Ryan Store and High Class are concerned—make it unclear how the retailer defendants' conduct falls under the Lanham Act's prohibition on

---

[26] ECF No. 33 at ¶¶ 56–57.
[27] *Id.* at ¶ 59.
[28] *Id.* at ¶¶ 34, 37, and 39.
[29] *Id.* at ¶ 47.

8

false advertising. Rule 9(b) requires much more specific allegations to allow a claim to continue against these defendants. I therefore dismiss Outlaw's claim against these defendants but give Outlaw leave to amend its complaint to allege additional facts sufficient to satisfy Rule 9(b).

**Conclusion**

IT IS THEREFORE ORDERED that Trepco's and Higuchi's motions to dismiss **[ECF Nos. 36, 49]** and defendants Ryan Store and High Class's joinders [ECF Nos. 50, 51] **are GRANTED.** Outlaw's claim against Trepco, Higuchi, Ryan Store, and High Class is dismissed without prejudice. Outlaw must file an amended complaint by March 21, 2019, or this case may be dismissed with prejudice.

Dated: March 11, 2019

_____
U.S. District Judge Jennifer A. Dorsey